## TOWN OF ENFIELD ET AL. v. ENFIELD SHADE TOBACCO, LLC, ET AL.
### (SC 16885)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued March 11—officially released August 12, 2003

*Kathleen Eldergill*, for the appellants (defendants).

*Maria N. Stavropoulos*, senior assistant town attorney, with whom were *Mark J. Cerrato*, assistant town attorney, and, on the brief, *Christopher W. Bromson*, town attorney, for the appellees (plaintiffs).

*Opinion*

VERTEFEUILLE, J. The defendants, Enfield Shade Tobacco, LLC, (Enfield Shade), Alexander K. Chickosky, Henry A. Maturo and Constance B. Talarski,[1] appeal from the trial court judgment entering a permanent injunction in favor of the plaintiffs, the town of Enfield (town) and its zoning enforcement officer, Wayne T. Bickley, barring the defendants from launching or landing a helicopter on a residentially zoned property, and from launching or landing a helicopter on an industrially zoned property without a special permit. The defendants' appeal raises two issues: (1) whether the trial court properly construed the town's zoning ordinance as barring the launching and landing of a helicopter in a residential zone, where the defendants claimed that a helicopter they used for crop dusting was "farm equipment" and part of a bona fide farming operation; and (2) whether the trial court properly determined that the defendants had been operating a

---

[1] Enfield Shade is a grower of tobacco and Alexander K. Chickosky is Enfield Shade's president. Constance B. Talarski and Henry Allen Maturo are two property owners who have leased parcels of land to Enfield Shade for the purpose of growing tobacco.

"heliport" because certain of their property had been used to launch and land a helicopter and, therefore, the defendants had violated the town's zoning ordinance by maintaining a heliport in an industrial zone without a special permit. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of both issues in this appeal. The town is a municipality that has duly adopted a zoning map and a zoning ordinance in accordance with General Statutes § 8-2.[2] Bickley, as the town's zoning enforcement officer, is vested with the power to enforce the zoning ordinance of the town pursuant to General Statutes § 8-12.[3] Maturo is the owner of two adjacent parcels of real property in the town that are located within an R-44 single-family residential zone (Maturo parcels). Talarski is the owner of certain real property in the town that is located within an I-1 industrial zone (Talarski parcel).

Maturo and Talarski leased their parcels to Enfield Shade for the purposes of farming tobacco. On numerous occasions in June and July, 2001, Enfield Shade operated a helicopter on the Maturo parcels and

[2] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . ."

[3] General Statutes § 8-12 provides in relevant part: "If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. . . ."

launched and landed the helicopter on the Talarski parcel for the purposes of spraying the tobacco crop located on the properties. The helicopter did not land on or take off from any specially designated area. The defendants did not obtain a special permit to operate a heliport on the Talarski parcel. At the time that the plaintiffs sought to enjoin the defendants' launching and landing of the helicopter, Enfield Shade was the only tobacco farmer in Connecticut permitted by the department of environmental protection to use a helicopter for the spraying of crops.

The plaintiffs brought the present action seeking to enjoin the defendants from launching or landing a helicopter on properties in the town.[4] The plaintiffs also filed a motion seeking temporary injunctive relief pending a final adjudication on the merits. By stipulation of the parties, the trial court considered the plaintiffs' claim for permanent injunctive relief based on the evidence submitted on the plaintiffs' application for a temporary injunction. After the hearing, the trial court rendered judgment permanently enjoining the defendants from launching or landing a helicopter in an R-44 residential zone within the town, and from landing or launching a helicopter in an I-1 industrial zone within the town without a special permit. This appeal followed.[5]

I

The defendants first claim that the trial court improperly construed the town's zoning ordinance as barring the launching and landing of a helicopter in a residential zone. Specifically, they claim that a helicopter used for

---

[4] In their complaint, the plaintiffs also sought damages, fines, attorney's fees and other relief that is not at issue in this appeal.

[5] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

crop dusting is "farm equipment" that lawfully can be stored on land used for farming within the residential zone, and that the right to use the helicopter should be inferred from the right to store it.[6] The defendants also claim that the use of a helicopter is part of a bona fide farming operation, which is a permitted use in a residential zone. The plaintiffs respond that because the zoning ordinance does not allow specifically for the launching or landing of a helicopter in a residential zone, such use of the land is prohibited. We agree with the plaintiffs. These issues pose questions of law and, therefore, as with all questions of law, our review is plenary. *State* v. *Parrott*, 262 Conn. 276, 286, 811 A.2d 705 (2003).

"[Z]oning regulations are local legislative enactments; see *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991); and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. See, e.g., *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 89, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, [218 Conn. 65, 73, 588 A.2d 624 (1991)]. Thus, in construing [zoning] regulations, our function is to determine the expressed legislative intent. E.g., *McCrann* v. *Town Plan & Zoning Commission*, 161 Conn. 65, 73, 282 A.2d 900 (1971); see *Smith* v. *Zoning Board of Appeals*, supra, 87. Moreover, [zoning] regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended; e.g., *Fullerton* v. *Dept. of Revenue Services*, [245 Conn. 601, 612, 714 A.2d 1203 (1998)]; *and the words employed therein are to be given their commonly*

---

[6] We understand the defendants to equate the term "use" of a helicopter with "launching and landing" it. The plaintiffs have not sought to stop the use of the helicopter for spraying crops, only the landing and launching of it on the Maturo parcels and the Talarski parcel.

*approved meaning.* E.g., *Schwartz* v. *Planning & Zoning Commission,* [208 Conn. 146, 153, 543 A.2d 1339 (1988)]." (Emphasis added.) *Wood* v. *Zoning Board of Appeals,* 258 Conn. 691, 699, 784 A.2d 354 (2001). With these principles in mind, we now turn to the defendants' claim that they have not violated the town's zoning ordinance.

We begin our analysis with the plain language of the provisions of the town's zoning ordinance governing permitted uses in a residential zone. Chapter 9 of the town's zoning ordinance, which sets forth the permitted uses within the town's residential zones, begins with the prefatory statement that "[t]he following . . . uses are permitted in One Family Residence Districts." Enfield Zoning Ordinance, c. 9, § 9-1. We construe the subsections of chapter 9 as representing the exclusive list of permitted uses in a residential zone because chapter 3, § 3-1.1 of the Enfield zoning ordinance provides in relevant part that "[n]o building, structure, or premises shall be used or occupied . . . except in conformity with the regulations herein specified for the district in which it is located." All uses that are not expressly permitted, therefore, are prohibited uses. The launching or landing of a helicopter is not among the permitted uses and, therefore, is prohibited in a residential zone under chapter 9 of the town's zoning ordinance.

The defendants rely on two provisions of the town's zoning ordinance, § 9-1.10 (a) and (d), in support of their claims. Bona fide farming operations, which are permitted in the R-44 zone, are defined as "[a]griculture, forestry, truck and nursery gardening greenhouses, live-stock and poultry raising and dairy farming . . . ." Enfield Zoning Ordinance, c. 9, § 9-1.10 (a). The defendants contend that launching and landing a helicopter to spray pesticides on crops falls within the meaning of "agriculture" as that word is defined in General Stat-

utes § 1-1 (q).[7] Agriculture is defined broadly in § 1-1 (q) and includes the "raising . . . [of] any agricultural or horticultural commodity . . . ." The defendants also rely on § 9-1.10 (d) of the Enfield zoning ordinance, which provides in relevant part that "[b]uildings used for storage on a farm of any number of motor vehicles and equipment when such vehicles . . . are used in connection with the operation of such farm are permitted as an accessory use" to bona fide farming operations. The defendants argue that it would be unreasonable to construe the ordinance as permitting the *storage* of a helicopter on the farm while at the same time prohibiting the launching and landing of it for *use* on the farm.

We reject both of these claims. As we previously concluded herein, § 3-1.1 of the Enfield zoning ordinance prohibits all uses that are not *expressly* permitted. While spraying crops with pesticides from the air might come within the broad definition of agriculture found in the ordinance and § 1-1 (q) of our General Statutes, we cannot conclude that launching and landing a helicopter, activities that implicate significant noise and safety considerations, are permitted implicitly in a residential zone. Our conclusion is supported by the fact that the ordinance permits a heliport in an industrial zone provided that a special permit is obtained. Enfield Zoning Ordinance, c. 12, § 12-3.1.11. There is no similar provision in chapter 9 of the town's zoning ordinance regarding residential zones.[8]

---

[7] General Statutes § 1-1 (q) provides in relevant part: "Except as otherwise specifically defined, the words 'agriculture' and 'farming' shall include cultivation of the soil . . . raising or harvesting any agricultural or horticultural commodity . . . the operation, management, conservation, improvement or maintenance of a farm and its buildings, tools and equipment . . . [and] the production or harvesting of . . . any agricultural commodity . . . ."

[8] During oral argument in this court, the defendants abandoned any claim that the use of the helicopter was a legal accessory use of a farming operation.

## II

The defendants next claim that the trial court improperly determined that the defendants were operating a "heliport" on industrially zoned property, and that a special permit therefore was required in order to make such use lawful. Specifically, the defendants, relying on a definition of heliport found in General Statutes § 15-34 (27),[9] assert that because the helicopter was not being launched from or landed at one particular, designated location, they were not operating a heliport. In response, the plaintiffs assert that the trial court properly applied a dictionary definition of heliport in interpreting the town's zoning ordinance, and that under such a definition, the launching and landing of a helicopter constituted the operation of a heliport requiring a special permit. We agree with the plaintiffs.

As we previously have stated herein, our review of the defendants' legal claim is plenary. We begin our analysis with chapter 12 of the town's zoning ordinance, which governs permitted uses of land within the town's industrial zones. Section 12-3.1 of the Enfield zoning ordinance provides in relevant part: "Uses specified in Sections 12-3.1.1 through 12-3.1.12 below may be permitted in accordance with the provisions of Chapter 16 [relating to special permits] . . . and all other uses are expressly prohibited." Section 12-3.1.11 of the Enfield zoning ordinance expressly allows for heliport use in an industrial zone, provided, however, that a special permit is obtained in accordance with chapter 16 of the ordinance. The ordinance, however, does not further define "heliport."

General Statutes § 15-34 (27), on which the defendants rely, is codified in chapter 266 of our statutes,

[9] General Statutes § 15-34 (27) provides: " 'Heliport' means an area of defined dimensions, either at ground level or elevated on a structure, designated for the landing and take off of helicopters, which may be restricted solely for that purpose."

and defines heliport as "an area of defined dimensions, either at ground level or elevated on a structure, designated for the landing and take off of helicopters, which may be restricted solely for that purpose." Chapter 266 relates to aeronautics and § 15-34 specifically provides at the outset that "[f]or the purpose of the laws of this state relating to aeronautics, the following words and phrases shall have the meanings herein given . . . ." The defendants point to no evidence that the town intended to incorporate this aeronautical definition of heliport when it adopted its zoning ordinance.

Moreover, application of the statutory definition of heliport would lead to the result that the town intended to require a special permit for helicopter landings and launchings only when the helicopter used an "area of defined dimensions"; General Statutes § 15-34 (27); and not when, as in the present case, the helicopter landed and took off wherever convenient to accomplish its purposes. The landing and launching of a helicopter clearly raises issues of public safety. We conclude that the defendants' interpretation of the town's zoning ordinance using the statutory definition of heliport would not lead to a reasonable and rational result given those issues of public safety. In addition, under the interpretation espoused by the defendants, the special permit requirement of chapter 16 of the zoning ordinance easily could be avoided by failing to designate a marked area of defined dimension for the helicopter's landing and launching.

We conclude that the trial court properly applied a commonly approved meaning of heliport as found in the dictionary. Webster's Third New International Dictionary defines a heliport as "a landing and takeoff place for a helicopter . . . ." Such a broad definition is consonant with appropriate regulation of an activity that poses a threat to public safety. Section 16-7 of the Enfield zoning ordinance provides in relevant part that

"[i]n authorizing any use [for which a special permit is required], the [Enfield planning and zoning commission] shall take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general, and of the residents of the immediate neighborhood, in particular, and may attach reasonable conditions and safeguards as a precondition to its approval."

Furthermore, the dictionary definition of heliport is in accord with the interpretation proffered by the plaintiffs, one of whom is the town's zoning enforcement officer. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . A court that is faced with two equally plausible interpretations of regulatory language, however, properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." (Citations omitted; internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 698–99.

The judgment is affirmed.

In this opinion the other justices concurred.