PAUL DINTO ELECTRICAL CONTRACTORS, INC.
*v.* CITY OF WATERBURY
(SC 16870)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued September 12—officially released December 9, 2003

*Charles E. Oman III*, for the appellant (defendant).

*John H. Van Lenten*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The sole issue in this appeal[1] is whether a corporation's motor vehicles are properly assessed

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

for personal property taxes in the town in which the corporation maintains its principal place of business, or in the towns in which the vehicles are actually located, that is, where they are regularly parked or garaged. The defendant appeals from the judgment of the trial court granting the plaintiff's motion for summary judgment and denying the defendant's motion for summary judgment. The effect of this judgment was that the vehicles properly would be assessed in the towns where they are regularly parked or garaged. The defendant claims that the judgment was improper because the statutory scheme governing the taxation of a corporation's personal property for municipal taxation purposes provides that the corporation's motor vehicles be taxed in the town of the corporation's principal place of business. We agree with the defendant and, accordingly, we reverse the judgment of the trial court.

The plaintiff, Paul Dinto Electrical Contractors, Inc., brought this action as a tax appeal, pursuant to General Statutes § 12-119,[2] seeking to remove certain of its

[2] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

motor vehicles from the October 1, 1998 grand list of the defendant, the city of Waterbury, and declaratory relief from taxation of those motor vehicles by the defendant as to all future tax years.[3] The parties filed a stipulation of facts, accompanied by numerous exhibits, and cross motions for summary judgment. The trial court granted the plaintiff's motion, denied the defendant's motion, and rendered judgment accordingly. This appeal followed.

The facts are undisputed. The plaintiff is an electrical contractor employing more than 200 people with its principal place of business in Waterbury. The defendant is a municipal corporation authorized by law to assess and collect personal property taxes on motor vehicles. The plaintiff owns, registers and insures several motor vehicles that it assigns to its employees for use in their employment. Several of these employees do not reside in Waterbury and, therefore, several of the motor vehicles owned by the plaintiff and assigned to its employees are regularly parked or garaged in other towns.

On October 1, 1998, certain motor vehicles owned by the plaintiff and assigned to its employees appeared on the grand lists for the towns where the plaintiff's employees reside. These same motor vehicles also appeared on the defendant's grand list. Thus, the plaintiff was obligated to pay personal property taxes on its motor vehicles to both the defendant and the respective towns in which its employees park or garage its motor vehicles.

---

[3] The plaintiff's original complaint contained four counts, including requests for a temporary injunction enjoining the defendant from issuing a notice of tax lien and compensatory and punitive damages. In the plaintiff's amended complaint, it dropped the two counts requesting an injunction and damages, and retained two other counts, thus limiting its requests to: (1) removal of certain of its motor vehicles from the defendant's October 1, 1998 grand list; and (2) a declaratory judgment that the defendant must remove the plaintiff's motor vehicles from its October 1, 1998 grand list and from all subsequent grand lists.

The plaintiff notified David Dietsch, the defendant's tax assessor, that several of its motor vehicles were garaged outside of Waterbury and claimed that their inclusion in the defendant's October 1, 1998 grand list was improper. Dietsch's subsequent refusal to remove the vehicles from the defendant's grand list and the defendant's position that it is the municipality to which the plaintiff owes taxes on its vehicles are the subject of the present appeal.

In addition to the foregoing facts, the parties stipulated to the entry of various documents and deposition transcripts as evidence. These exhibits are summarized in relevant part, and include the testimony of the plaintiff's treasurer, the defendant's tax assessor, the chief of legal services of the department of motor vehicles (department), the manager of the department's property division, and the head motor vehicle examiner for the department's property tax unit.

The plaintiff's treasurer, Cynthia Graziano, is responsible for the administration of the plaintiff's property tax payments. Graziano testified in her deposition that the plaintiff had paid its property taxes on all its motor vehicles to the defendant until 1996. At that time she was contacted by the tax assessor for the city of Brookfield, who advised her that he had noticed a vehicle bearing the plaintiff's logo that he believed to be garaged in Brookfield and that he further believed should be included on Brookfield's grand list. Graziano testified further that she contacted Dietsch's office, and was advised that the plaintiff's vehicles should be taxed in the towns in which they are garaged, and that the plaintiff should obtain forms from the department that would allow the plaintiff to change the vehicles' "tax town" codes. Graziano also testified that, subsequent to filing the appropriate forms with the department to reflect the towns in which the plaintiff's vehicles were garaged, she received a visit from representatives of Dietsch's

office at the plaintiff's offices in Waterbury, who informed her that the plaintiff's motor vehicles were subject to taxation by the defendant regardless of where the vehicles were garaged.

Dietsch testified in his deposition that it was the position of the defendant's tax assessment office that the plaintiff's motor vehicles should be taxed in Waterbury, where the plaintiff maintains its principal place of business, rather than the towns in which the vehicles are garaged. Dietsch based this position on the text of the applicable statutes, and stated that his interpretation was shared with other municipal tax assessors with whom he serves on the motor vehicle committee of the Connecticut association of assessing officers (association). Dietsch also testified that the association has had to address the problem of taxpayers registering motor vehicles in towns other than their towns of residence in order to take advantage of differences among mill rates.

The chief of legal services for the department, John Yacavone, testified in his deposition that the issue of the "situs" of motor vehicles for personal property taxation purposes has arisen on regular and numerous occasions since he began his tenure with the department in 1987, and it has become a "perennial subject" in the legislature. Yacavone further testified that the department has a statutory duty to provide annual lists of registered motor vehicles to Connecticut's municipal tax assessors for taxation purposes, and that those lists are prepared from information provided by registrants, at the time they register their motor vehicles, in a standardized form, issued by the department, known as an "H-13" form. The H-13 form requires the registrant to provide the name of the "[Connecticut] town where vehicle is to be taxed as property," and this information is used by the department to compile the list that the department is required by law to furnish to town tax assessors. Yacavone further testified that there is no statute or

regulation mandating the style and content of the H-13 form, that such matters are left to the discretion of the commissioner of motor vehicles, and that he had issued a memorandum in 1999 to the then deputy commissioner of motor vehicles suggesting a revision of the "tax town" language requested by the H-13 form. Finally, Yacavone testified that he had issued the memorandum because he did not believe that any statute or regulation authorized the department to base its lists on the situs of motor vehicles, and because personal property is generally taxable where the "owner has his primary residence or principal place of business."

The division manager of the property division of the department, David Ostafin, testified in his deposition that registrants are instructed by a parenthetical comment, located near the space on the H-13 form requesting the name of the registrant's tax town, that the proper name is the name of the town "where vehicle is garaged for longest period in a year." This parenthetical instruction was revised in 1995 to add the word "parked" to supplement the word "garaged," because, as Ostafin testified, employees at the department were "sick of saying to people that they're still liable for taxes even though they don't have a garage." Ostafin further testified that, to his knowledge, no statute or regulation required the department to obtain the names of the towns in which registrants park or garage their motor vehicles.

The head motor vehicle examiner in the department's property tax unit, Marcia Mazur, testified that the department's property tax unit is responsible for correcting and revising the department's motor vehicle registration information, and that she processed the "tax town" changes requested by the plaintiff. Mazur further testified that she had informed the plaintiff that a town's tax assessor, and not the department, determines whether to accept a change in a registrant's "tax

town," and that the parenthetical instruction on the H-13 form was "misleading" and creates "chaos" for her.

The parties presented these stipulated facts and evidence to the trial court, and they provided the basis for the court's subsequent judgment in favor of the plaintiff. The defendant claims that the trial court improperly interpreted the taxation statutes applicable to this case and, therefore, that the judgment in favor of the plaintiff was improper. We agree.

We begin by stating the standard of review governing this appeal. In reviewing the propriety of a trial court's grant of summary judgment, this court's scope of review is plenary. *Fojtik* v. *Hunter*, 265 Conn. 385, 389, 828 A.2d 589 (2003). Furthermore, because the parties have stipulated to the relevant facts and there are no material facts in dispute, the dispositive issue centers around the proper construction of the applicable statutes, namely, General Statutes §§ 12-41 (b),[4] 12-43,[5]

---

[4] General Statutes § 12-41 (b) provides: "No person required by law to file an annual declaration of personal property shall include in such declaration motor vehicles which are registered in the office of the state Commissioner of Motor Vehicles."

[5] General Statutes § 12-43 provides: "Each owner of tangible personal property located in any town for three months or more during the assessment year immediately preceding any assessment day, who is a nonresident of such town, shall file a declaration of such personal property with the assessors of the town in which the same is located on such assessment day, if located in such town for three months or more in such year, otherwise, in the town in which such property is located for the three months or more in such year nearest to such assessment day, under the same provisions as apply to residents, and such personal property shall not be liable to taxation in any other town in this state. The declaration of each nonresident taxpayer shall contain the nonresident's post-office and street address. The assessors shall mail blank declaration forms to each nonresident, or to such nonresident's attorney or agent having custody of the nonresident's taxable property, at least fifteen days before the expiration of the time for filing such declaration. If the identity or mailing address of a nonresident taxpayer is not discovered until after the expiration of time for filing a declaration, the assessor shall, not later than ten days after determining the identity or mailing address, mail a declaration to the nonresident taxpayer. Said taxpayer shall file the declaration not later than fifteen days after the date such declaration is sent. Each nonresident taxpayer who fails to file a declaration in accordance with the provisions of this section shall be subject to the penalty provided in subsection (d) of section 12-41. As used in this section, 'nonresident' means a person who does not reside in the town in which such person's

12-59,[6] 12-71 (a),[7] 14-12 (a)[8] and 14-163.[9] Questions of statutory construction also raise questions of law,

tangible personal property is located on the assessment day, or a company, corporation, limited liability company, partnership or any other type of business enterprise that does not have an established place for conducting business in such town on the assessment day."

[6] General Statutes § 12-59 provides: "The whole property in this state of each corporation organized under the law of this state, whose stock is not liable to taxation, and which is not required to pay a direct tax to this state in lieu of other taxes, and whose property is not expressly exempt from taxation, and the whole property in this state of each corporation organized under the law of any other state or country, including each foreign municipal electric utility, shall be set in the grand list and shall be liable to taxation in the same manner as the property of individuals. The stockholders of any corporation, the whole property of which is assessed and taxed in its name, shall be exempt from assessment or taxation for their stock therein. As used in this section, 'foreign municipal electric utility' means a town, city, borough or any municipal corporation, department or agency thereof, of a state other than this state, whether or not separately incorporated, which is authorized under the laws of the state in which it is organized or resident to generate and transmit electric energy and which holds property in this state."

[7] General Statutes § 12-71 (a) provides: "All goods, chattels and effects or any interest therein, including any interest in a leasehold improvement classified as other than real property, belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides, subject to the provisions of sections 12-42 and 12-59. Any such property belonging to any nonresident shall be listed for purposes of property tax as provided in section 12-43."

[8] General Statutes § 14-12 (a) provides: "No motor vehicle shall be operated or towed on any highway, except as otherwise expressly provided, unless it is registered with the commissioner, provided any motor vehicle may be towed for repairs or necessary work if it bears the markers of a licensed and registered dealer, manufacturer or repairer and provided any motor vehicle which is validly registered in another state may, for a period of sixty days following establishment by the owner of residence in this state, be operated on any highway without first being registered with the commissioner. Except as otherwise provided in this subsection (1) a person commits an infraction if he registers a motor vehicle he does not own or if he operates, or allows the operation of, an unregistered motor vehicle on a public highway or (2) a resident of this state who operates a motor vehicle he owns with marker plates issued by another state shall be fined not less than one hundred fifty dollars nor more than three hundred dollars. If the owner of a motor vehicle previously registered on an annual or biennial basis, the registration of which expired not more than thirty days previously, operates or allows the operation of such a motor vehicle, he shall be fined the amount designated for the infraction of failure to renew a registration, but his right to retain his operator's license shall not be affected. No operator other than the owner shall be subject to penalty for the operation of such a previously registered motor vehicle."

[9] General Statutes § 14-163 provides: "The commissioner, on or before the first day of December, annually, shall furnish to the tax assessors in each town a list containing the names and addresses of the owners of motor

which are subject to plenary review by this court. *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003); *Enfield* v. *Enfield Shade Tobacco*, 265 Conn. 376, 380, 828 A.2d 596 (2003).

All of the statutes involved in this appeal pertain to municipal taxation of tangible property, in general, and to the taxation, by municipalities, of a corporation's motor vehicles, in particular. The specific issue, namely, whether a corporate owner of a motor vehicle must pay personal property taxes on that motor vehicle to the municipality in which the owner has its principal place of business or to the municipality in which the motor vehicle is located, has, as this record demonstrates, vexed taxpayers and tax assessors for years. We begin our analysis of this issue by restating the process by which we interpret statutes.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute[s] [themselves], to the legislative history and circumstances surrounding [their] enactment, to the legislative policy [they were] designed to implement, and to [their] relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quo-

---

vehicles and snowmobiles residing in their respective towns, as they appear by the records of the Department of Motor Vehicles, with a description of such vehicles. The commissioner shall, on or before December 1, 2000, and December first, annually thereafter, furnish to the Commissioner of Revenue Services a list containing the names, addresses and federal Social Security account numbers or federal employer identification numbers, or both, if available, of the owners of motor vehicles as they appear by the records of the Department of Motor Vehicles, and the vehicle identification numbers of such vehicles, in order to establish the identification of persons affected by the tax laws of the state."

tation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).[10]

On the basis of the language of the relevant statutes, the policies they were designed to implement, and their relationship to other legislation governing the same subject matter, we conclude that a corporation's motor vehicles properly are assessed, for purposes of personal property taxation, in the town in which the corporation maintains its principal place of business, irrespective of where its motor vehicles are actually located. Furthermore, we conclude, based on the language of the relevant statutes, that it is the obligation of the commissioner of motor vehicles to furnish lists of all Connecticut registered motor vehicles and their owners to the tax assessors of the respective towns where those owners reside, or, in the case of a corporation, where the corporation has its principal place of business.

We begin with the language of the applicable statutes. "In performing this task, we begin with a searching examination of the language of the statute[s], because that is the most important factor to be considered. In

[10] In *State* v. *Courchesne*, supra, 262 Conn. 567–78, this court explained that, as part of the judicial task of statutory interpretation, we would not follow the so-called "plain meaning rule," which operates to preclude the court, in certain cases, from considering sources in addition to the statutory text in order to determine its meaning. We are cognizant that, subsequent to our decision in *Courchesne*, No. 03-154, § 1, of the 2003 Public Acts (P.A. 03-154), has legislatively overruled that part of *Courchesne* in which we stated that we would not require a threshold showing of linguistic ambiguity as a precondition to consideration of sources of the meaning of legislative language in addition to its text. *State* v. *Courchesne*, supra, 577. Public Act 03-154 provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." This case does not present an appropriate occasion to consider P.A. 03-154. First, this is not a case in which the applicable statutory text is plain and unambiguous. Second, the parties, whose briefs were filed long before the enactment of P.A. 03-154, have not addressed it.

doing so, we attempt to determine [their] range of plausible meanings, and, if possible, narrow that range to those that appear most plausible." Id.

The language of General Statutes §§ 12-40,[11] 12-41,[12] 12-42,[13] 12-43; see footnote 5 of this opinion; and General

[11] General Statutes § 12-40 provides: "The assessors in each town, except as otherwise specially provided by law, shall, on or before the fifteenth day of October annually, post on the signposts therein, if any, or at some exterior place near the office of the town clerk, or publish in a newspaper published in such town or, if no newspaper is published in such town, then in any newspaper published in the state having a general circulation in such town, a notice requiring all persons therein liable to pay taxes to bring in a declaration of the taxable personal property belonging to them on the first day of October in that year in accordance with section 12-42 and the taxable personal property for which a declaration is required in accordance with section 12-43."

[12] General Statutes § 12-41 provides: "(a) Definition. 'Municipality', whenever used in this section, includes each town, consolidated town and city, and consolidated town and borough.

"(b) Motor vehicles. No person required by law to file an annual declaration of personal property shall include in such declaration motor vehicles which are registered in the office of the state Commissioner of Motor Vehicles.

"(c) Property included. Confidentiality of commercial and financial information. The annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to, the following property: Machinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies, leasehold improvements classified as other than real property and furniture and fixtures of stores, offices, hotels, restaurants, taverns, halls, factories and manufacturers. Commercial or financial information in any declaration filed under this section shall not be open for public inspection.

"(d) Penalty. (1) Any person who fails to file a declaration of personal property on or before the first day of November, or on or before the extended filing date as granted by the assessor pursuant to section 12-42 shall be subject to a penalty equal to twenty-five per cent of the assessment of such property; (2) any person who files a declaration of personal property in a timely manner, but has omitted property, as defined in section 12-53, shall be subject to a penalty equal to twenty-five per cent of the assessment of such omitted property. The penalty shall be added to the grand list by the assessor of the town in which such property is taxable."

[13] General Statutes § 12-42 provides: "The assessors may grant an extension of not more than forty-five days to file the declaration required pursuant to section 12-41 upon determination that there is good cause. If no declaration is filed, the assessors shall fill out a declaration including all property

Statutes § 12-58[14] strongly indicates that the primary foundation for the taxation of personal property is the "declaration" filed by the taxpayer. For example, § 12-40 requires the town tax assessors to notify "all persons therein liable to pay taxes to bring in a declaration of [their] taxable personal property . . . ." Section 12-41 (c) describes what the "annual declaration" shall include. Section 12-42 provides for an extension of the time for the filing of the "declaration." Section 12-43 makes special rules for the "filing [of] a declaration" by the owner of taxable property who is a nonresident

which the assessors have reason to believe is owned by the person for whom such declaration is prepared, liable to taxation, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12-63 and 12-71, from the best information they can obtain, and add thereto twenty-five per cent of such assessment. When the first day of November is a Saturday or Sunday, the declaration may be filed or postmarked on the next business day following."

[14] General Statutes § 12-58 provides: "The property of any trading, mercantile, manufacturing or mechanical business shall be assessed in the name of the owner or owners on the first day of October or such other assessment date as is specially provided by law in the town where the business is carried on; and the personal property declaration of any such owner or owners shall be given in by the person having charge of such business residing in such town, when the owner or owners do not reside therein. The amount of goods on hand for consumption in any such business, including finished and partly finished goods and raw materials and supplies, so assessed shall be the monthly average quantity of goods or supplies on hand during the year ending on the first day of October if such owner or owners has or have owned such business during the whole of such year or the monthly average quantity of goods on hand during the portion of the year ending on such date as such owner or owners has or have owned such business if such owner or owners has or have owned such business during only a portion or portions of such year, but this rule shall not apply to furniture, fixtures and machinery which are not for sale in the regular course of any such business. Furniture, fixtures and machinery on hand on the assessment date but not for sale in the regular course of business shall be listed for taxation under such of the other provisions of the general statutes and of special acts as are applicable. This section shall apply to the property of all persons, whether residents of this state or not, and to the property of all corporations, whether domestic or foreign. The word 'town' as used herein includes a consolidated town and city and a consolidated town and borough."

of a town where his or her property is located. Section 12-58 provides special rules for the filing of "the personal property declaration" of property of trading, manufacturing or mechanical businesses.

Pursuant to § 12-71 (a), property of residents of this state "shall be listed for purposes of property tax *in the town where such person resides*, subject to the provisions of sections 12-42[15] and 12-59."[16] (Emphasis added.) See footnote 7 of this opinion. Section 12-59 provides for declarations by corporations, and provides that their property "shall be liable to taxation in the same manner as the property of individuals." See footnote 6 of this opinion. The trial court assumed, as have the parties on appeal, and as do we, that this means that the town of the corporation's principal place of business is the statutory equivalent of the town of an individual's residence and, therefore, pursuant to § 12-71, a corporation must file its declaration with the tax assessor of the town of its principal place of business.

Under this statutory regime, therefore, the plaintiff's motor vehicles would be taxable in Waterbury, because that is the location of the plaintiff's principal place of business, and, therefore, that is where the plaintiff was obligated to file its declaration of taxable personal property. This would be so *unless, however, there is a different set of rules governing the taxation of motor vehicles*. We conclude that there is such a different set of rules, but that they mandate the same result, namely,

---

[15] Section 12-42 addresses extensions of time for filing the declaration, and is not involved in the present case.

[16] Sections 12-41 (b), 12-43, 12-58, 12-59 and 12-71 (a) were all amended by Public Acts 1999, No. 99-189, §§ 2, 4, 10, 11, 12 and 20, respectively. The amendments substituted the filing of a "declaration" for a "list," in order to clarify the difference between a town's grand list and the list or declaration of personal property filed by the taxpayer. The amendments did not alter the meaning or applicability of the statutes to this case in any way, nor did the technical amendments to § 12-71 (a) enacted by Public Acts 2000, No. 00-230, § 3.

that motor vehicles are taxed in the town of their corporate owner's principal place of business.

This different set of rules is set forth in §§ 12-41 (b), 14-12 and 14-163. Section 12-41 (b) provides: "No person required by law to file an annual declaration of personal property shall include in such declaration motor vehicles which are registered in the office of the state Commissioner of Motor Vehicles." See footnote 4 of this opinion. Thus, under this provision, motor vehicles registered in Connecticut are specifically exempted from the declaration of taxable personal property required under the general statutory scheme for taxation of personal property. Consequently, a tax assessor would not be informed of the taxability of a motor vehicle by virtue of a taxpayer's declaration. Under § 14-12 (a), Connecticut residents are required to register their motor vehicles with the commissioner of motor vehicles. See footnote 8 of this opinion. Pursuant to § 14-163, however, the commissioner of motor vehicles is required to "furnish to the tax assessors in each town a list containing the names and addresses of the owners of motor vehicles and snowmobiles *residing* in their respective towns, as they appear by the records of the Department of Motor Vehicles, with a description of such vehicles." (Emphasis added.) See footnote 9 of this opinion. Thus, tax assessors do not secure the information regarding the ownership of motor vehicles by residents of their towns from those residents' personal property declarations, but, instead, secure that information from the commissioner of motor vehicles pursuant to § 14-163. This language strongly suggests, therefore, that motor vehicles are taxed in the town of their owners' residence and, in the case of the corporate owner, in the town of the corporation's principal place of business.

This interpretation of the language of the applicable statutes is supported by the general purposes of the

statutory scheme governing taxation of personal property. These legislative purposes are based on the fundamental premises that, first, the personal property tax system is, by practical necessity, a self-reporting system, and, second, "it is a system that has long rested on the notion that taxation be as nearly equal as possible." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 434, 692 A.2d 742 (1997). The first premise, therefore, suggests a legislative intent to create simple and direct mechanisms for self-reporting, and the second premise suggests a legislative intent to create a reliable statutory scheme capable of spreading the tax burden as equitably as possible. Motor vehicles are, unlike much other taxable personal property, inherently mobile and, as the present case discloses, subject to being parked or garaged in various places. Requiring that their taxation be determined by where their registration indicates their owners reside, irrespective of where they may be garaged from time to time, lends a degree of certainty that is fully consistent with the twin purposes of the taxation system. Furthermore, by having the motor vehicle registration process automatically trigger the place of taxation, any potential for either manipulation of the taxation process[17] or fraud on the part of the taxpayer[18] is minimized.

The plaintiff argues that, because its motor vehicles are located for more than three months of each assessment year in towns other than the defendant, § 12-43 requires that it pay personal property taxes on those motor vehicles to the towns in which the vehicles are

[17] Under a contrary interpretation, a taxpayer could choose to garage his or her motor vehicle in a town with a mill rate lower than the mill rate of his or her town of residence, thus reducing the tax payable thereon.

[18] A taxpayer could fraudulently claim, as we explain later in this opinion, that his or her motor vehicle is garaged in a town with a lower mill rate than the town of his or her residence, even though, in fact, it is garaged at his or her residence.

located and not to the defendant. Section 12-43 provides that "[e]ach owner of tangible personal property located in any town for three months or more during the assessment year immediately preceding any assessment day, who is a nonresident of such town, shall file a declaration of such personal property with the assessors of the town in which the same is located . . . ." Specifically, the plaintiff contends that, because its vehicles are located in towns other than the defendant for the requisite three months or more, § 12-43 requires it to file declarations with the tax assessors of those *other towns*, and to include in those declarations the motor vehicles located in those other towns. We disagree.

Section 12-43 expressly directs taxpayers who are nonresidents of the towns in which their personal property is located for a specified number of months each year to file a declaration of such property with the tax assessors of the towns in which the property is located. Section 12-43, therefore, provides an exception to the general rule that personal property is taxed by the town in which the owner of the property resides. Nonetheless, § 12-43 still requires the taxpayer to file a declaration—albeit with the tax assessor of the town where its property is located and not the tax assessor of the town in which it resides. The requirement to file a declaration under § 12-43, however, renders that section inapplicable to motor vehicles because § 12-41 (b) specifically provides that "[n]o person *required by law to file an annual declaration of personal property* shall include in such declaration motor vehicles which are registered in the office of the state Commissioner of Motor Vehicles." (Emphasis added.) We conclude, therefore, that nothing in § 12-43 overrides the specific exemption from declaration of personal property provided by § 12-41 (b).[19]

---

[19] We are cognizant that a portion of the legislative history surrounding No. 82-458 of the 1982 Public Acts, which amended § 12-43 by shortening the length of time, from seven months to three months, that personal prop-

The plaintiff also argues that the language of § 14-163 requires the commissioner of motor vehicles to furnish a list of motor vehicles located in each town to the tax assessor of that town, and that this requirement evinces the legislature's intent to tax motor vehicles

erty owned by a nonresident of a town would have to be located in that town before the town could assess and collect taxes on it, contains a brief statement susceptible of the interpretation that motor vehicles would be included within the definition of personal property referred to by § 12-43. That legislative history contains the following colloquy between Representatives Linda N. Emmons and Michael D. Rybak, and Speaker of the House Ernest N. Abate:

"[Representative Emmons]: Thank you, Mr. Speaker. Through you a question to the proponent of the bill.

"[The Speaker]: State your question please, madame.

"[Representative Emmons]: When you discuss tangible personal property, would that be an automobile?

"[The Speaker]: Rep[resentative] Rybak.

"[Representative Rybak]: Yes, it could be an automobile, through you, Mr. Speaker." 25 H.R. Proc., Pt. 16, 1982 Sess., p. 5402.

We do not read this legislative history as justifying an interpretation of § 12-43 that would require nonresident owners of Connecticut registered motor vehicles to declare those vehicles to the towns in which the vehicles are parked. This is true for three reasons. First, the comment was made within the context of a broader discussion about the liability of persons who are nonresidents of *Connecticut* for taxes assessed on their personal property located within the state for a certain number of months each year. Such nonresidents of Connecticut, by definition, would not fall within the motor vehicle exception of § 12-41 (b), because residents of states other than Connecticut would not ordinarily register their vehicles with the commissioner of motor vehicles. Only motor vehicles registered in Connecticut are excepted from declarations of personal property.

Second, "[u]nlike other examples of exchanges on the floor of the [House], this exchange does not have the hallmarks of a colloquy designed to indicate a legislative intent behind statutory language." *State* v. *Piorkowski*, 236 Conn. 388, 412, 672 A.2d 921 (1996). Instead, the representatives were addressing a hypothetical situation that the bill may or may not have affected.

Third, the statutory text of §§ 12-43 and 12-41 (b) strongly supports our conclusion that § 12-41 (b) exempts Connecticut registered motor vehicles from declarations under § 12-43. "In such a case, the more strongly the bare text supports [a particular] meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." *State* v. *Courchesne*, supra, 262 Conn. 577–78. This brief legislative history is simply insufficient to yield a contrary meaning of the text that both its language and purpose strongly support.

where they are parked or garaged and not where the owner of the motor vehicles resides, if that residence is in a town other than the town in which its motor vehicles are located. Section 14-163 provides in relevant part: "The commissioner, on or before the first day of December, annually, shall furnish to the tax assessors in each town a list containing the names and addresses of the owners of motor vehicles and snowmobiles *residing in* their respective towns, as they appear by the records of the Department of Motor Vehicles . . . ." (Emphasis added.) Specifically, the plaintiff contends that the phrase "residing in" modifies "motor vehicles and snowmobiles" and does not modify *owners* of motor vehicles and snowmobiles. Under the plaintiff's interpretation, therefore, the commissioner of motor vehicles must furnish a list of all motor vehicles "residing in" a given town to that town's tax assessor. We do not agree.

Although the grammatical structure of the sentence in question may be seen as employing "residing in" as a prepositional, adjectival phrase modifying "motor vehicles and snowmobiles";[20] we conclude, to the contrary, that the phrase "residing in" more commonly refers to people, not inanimate objects and, therefore, as used in § 14-163, should be read as modifying "owners." For example, the word "reside" is generally defined in terms of where people live rather than where inanimate objects are located. The most apt definition of "reside" in this context is "[t]o dwell permanently or for a considerable time, to have one's settled or usual abode, to live *in* or *at* a particular place."[21] (Emphasis

---

[20] See generally Chicago Manual of Style (15th Ed. 2003), rules 5.166 and 5.167.

[21] It is true that the Oxford English Dictionary does contain quotations using the word "reside" in reference to something other than where a person lives. For example: "The verie instant that I saw you, did My heart flie to your seruice, there resides To make me slaue to it." Oxford English Dictionary (2d Ed. 1989), quoting W. Shakespeare, The Tempest, act 3, sc. 1. Prefacing these quotations, however, is an editorial note stating that "resides," in these

in original.) Oxford English Dictionary (2d Ed. 1989). Ordinarily, people, and not inanimate objects, dwell or have their abode in a place. Furthermore, "[w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use." *Bortner* v. *Woodbridge*, 250 Conn. 241, 267, 736 A.2d 104 (1999). On the basis of an examination of the statutory text, the plaintiff's interpretation of "residing in" is strained and contrary to ordinary usage, and this fact alone strongly cautions against its adoption. Furthermore, the plaintiff's interpretation of "residing in" would be inconsistent with the legislative purposes behind the entire statutory scheme for taxation of personal property of which § 14-163 is a necessary part. As we have explained, one of the fundamental premises of the taxation scheme is that it is, by practical necessity, a self-reporting system. *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 434. This premise suggests, in turn, a legislative purpose to render mechanisms and procedures for self-reporting relatively simple and direct. Under the plaintiff's interpretation, however, the process of self-reporting would be confusing and difficult, because if the motor vehicle's "residence" were dispositive of the issue of which town may assess taxes on it, there would need to be some indication in § 14-163 of how long a motor vehicle must be located in a certain town before that motor vehicle could be considered, for taxation purposes, a "resident." We can find no such indication.

---

instances, is being used in a "transferred sense," meaning that its more common usage is being transferred for artistic purposes to another context. Thus "resides," which commonly refers to human beings is, in this transferred sense, used to refer to a human heart. Simply because a word has been used in a particular way or in a particular context, however, does not mean that it must always be read to mean the same thing in every context. Merely because "resides in" *may* be used to refer to something other than where a person lives, does not compel us to desert common sense and common usage and assign it such a meaning in this context.

The plaintiff relies, in support of its argument, on the department's H-13 form. The plaintiff's argument suggests the H-13 form, which all motor vehicle owners in Connecticut are required to fill out and submit to the department, requires the motor vehicle registrant to state, not only his town of residence, but also the name of the "town where vehicle is to be taxed as property." In the space on the H-13 form for the tax town, the department has included the following parenthetical information for instructional purposes only: "Where vehicle is garaged/parked for longest period in a year." This part of the form would indicate that the tax town is determined by where the motor vehicle is garaged or parked for more than six months per year and evinces the department's understanding that it must furnish a list to municipal tax assessors of motor vehicles "residing in" each town, indicating in turn that the town in which the vehicle is located is the town to which personal property taxes are payable. The plaintiff's reliance on the H-13 form is without merit.

Simply put, we can find no statutory basis for the language used in the H-13 form. Nowhere in the statutory scheme for the municipal taxation of personal property, or in the statutory scheme for the registration of motor vehicles, is there any requirement that the department collect the names of the towns in which registrants' motor vehicles are parked. Section 14-163, however, expressly provides that the commissioner must furnish lists of names and addresses of owners of motor vehicles to the tax assessors for their respective towns of residence. No mention is made in § 14-163 of furnishing lists of motor vehicles parked or garaged in each town. Furthermore, the testimony of Yacavone indicates that he placed the commissioner of motor vehicles on notice that the H-13 form was not grounded in the statutes when he issued a memorandum to the commissioner advising him that the H-13 form should

be revised to remove the instructional language on the location of registrants' motor vehicles. We agree with that prudent advice.

In addition, permitting the taxpayer simply to fill in the name of a town on the department's form and thereby subject a motor vehicle to taxation in a town other than the town in which its owner resides would lend itself to two potential forms of abuse. First, a motor vehicle owner could choose to garage a motor vehicle in a town with a mill rate lower than that of the town of his residence. Second, a motor vehicle owner fraudulently could claim that his motor vehicle was in fact garaged in a town with such a lower mill rate, and, in such a case, it would be difficult for the tax assessor of the owner's town of residence to detect such a fraud. In either event, the purpose of the taxation scheme to tax all persons and property equitably would be frustrated. We are not inclined to interpret our taxation statutes so as to frustrate their underlying purposes.

The plaintiff, however, argues that taxing motor vehicles owners in the towns in which the motor vehicles are located does serve a legitimate purpose, namely, that it compensates the towns where the vehicles are garaged for the wear and tear on their roads. This purpose, the plaintiff suggests, supports its interpretation of § 14-163 that the commissioner of motor vehicles is required to notify the tax assessors of the towns of the *motor vehicles'* residences, rather than of their *owners'* residences.[22] This proffered legislative purpose, how-

---

[22] The plaintiff also relies on certain of the legislative history surrounding No. 82-458 of the 1982 Public Acts, which amended § 12-43. See footnotes 5 and 19 of this opinion. Representative Rufus Allyn stated, during the House debates, that he supported the bill because individuals residing in Connecticut for only part of the year "are paying few enough taxes in Connecticut," and that "if they are using our roads and so forth, at least they can pay the taxes on their cars." 25 H.R. Proc., Pt. 16, 1982 Sess., p. 5405. Representative Allyn's statements, however, do not support the plaintiff's argument that the legislature intended taxes to go to the benefit of the Connecticut town in which a motor vehicle is garaged as opposed

ever, rests on a shaky premise, namely, that the legislature contemplates that motor vehicles would cause the most wear and tear to the roads in the towns in which they are garaged. That premise, however, is speculative at best, and for that reason we are not inclined to attribute it to the legislature, at least without some clear indication thereof. Motor vehicles are highly mobile by nature, and it is difficult to assess, in a meaningful way, their impact on the infrastructure of the town where they are garaged. One could just as easily claim that the roads in the town where a person is employed are impacted as much or more by that person's motor vehicles. Suffice it to say, the legislative purpose that the plaintiff proposes is not bolstered by an examination of the text of § 14-163, and would be contrary to the underlying purposes of the personal property tax system.

The judgment is reversed and the case is remanded to the trial court with direction to deny the plaintiff's motion for summary judgment, to grant the defendant's motion for summary judgment, and to render judgment for the defendant.

In this opinion the other justices concurred.

to the Connecticut town where the owner of that motor vehicle resides. Instead, Representative Allyn's comments specifically referred to residents of other states who live here for part of the year, yet who were not obligated to pay taxes on their motor vehicles to *any* Connecticut town because their vehicles are not registered in Connecticut. Presumably, because those vehicles are not otherwise within the exception from declaration provided by § 12-41 (b), they may be taxable if they meet the requirements of § 12-43.