# FRANCES WIHBEY *v.* ZONING BOARD OF APPEALS OF THE PINE ORCHARD ASSOCIATION
## (SC 20839)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The defendant zoning board of appeals and the intervening defendants appealed, on the granting of certification, from the judgment of the Appellate

Wihbey *v.* Zoning Board of Appeals

Court reversing in part the trial court's judgment. The trial court had reversed the zoning board's decision to uphold a zoning enforcement officer's order directing the plaintiff property owner to cease and desist from renting his property on a short-term basis. The defendants claimed, inter alia, that the Appellate Court had incorrectly determined that the zoning regulations governing the plaintiff's property were ambiguous and should be interpreted to permit short-term rentals of the plaintiff's property. *Held*:

The Appellate Court correctly determined that the language of the zoning regulations permitting the use of a property as a single-family dwelling was ambiguous and that the short-term rental of a single-family dwelling constituted a permissible use under those regulations.

(*Two justices dissenting in one opinion*)

Argued March 27—officially released July 29, 2024*

*Procedural History*

Appeal from the decision of the defendant zoning board of appeals upholding a cease and desist order issued to the plaintiff, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Sizemore, J.*, granted the motion to intervene as defendants filed by Michael B. Hopkins et al.; thereafter, the court, *Rosen, J.*, sustained the plaintiff's appeal and rendered judgment thereon, from which the defendants, on the granting of certification, appealed to the Appellate Court, *Bright, C. J.*, and *Elgo* and *Norcott, Js.*, which reversed in part the trial court's judgment and remanded the case for further proceedings, and the defendants, on the granting of certification, appealed to this court. *Affirmed.*

*Peter A. Berdon*, for the appellant (defendant).

*Marc J. Kurzman*, with whom were *David S. Hardy* and, on the brief, *Damian K. Gunningsmith*, for the appellants (intervening defendants).

*Franklin G. Pilicy*, with whom was *Daniel J. Mahaney*, for the appellee (plaintiff).

* July 29, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Wihbey *v.* Zoning Board of Appeals

*Opinion*

ALEXANDER, J. In this certified appeal, we must decide whether a zoning regulation that permitted the use of a property as a single-family dwelling allowed the owner to rent the property on a short-term basis. The plaintiff, Frances Wihbey, was ordered to cease and desist from renting his property to guests on a short-term basis by the Pine Orchard Association zoning enforcement officer. The plaintiff appealed to the defendant, the Zoning Board of Appeals of the Pine Orchard Association (board), which upheld the cease and desist order. The plaintiff then appealed to the trial court, which reversed the board's decision. The board and the intervening defendants, Michael B. Hopkins and Jacqueline C. Wolff,[1] appealed from the trial court's judgment to the Appellate Court, which affirmed in part and reversed in part the trial court's judgment. See *Wihbey* v. *Zoning Board of Appeals*, 218 Conn. App. 356, 396, 292 A.3d 21 (2023). We then granted the defendants' petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that short-term rentals of a single-family dwelling constituted a permissible use of the subject property under the 1994 Pine Orchard Association zoning regulations?" *Wihbey* v. *Zoning Board of Appeals*, 346 Conn. 1019, 1020, 292 A.3d 1254 (2023). We affirm the judgment of the Appellate Court.

The record reveals the following facts that were found by the trial court. The Pine Orchard Association (Pine Orchard) is an incorporated borough and municipal subdivision of the town of Branford and has jurisdic-

---

[1] Hopkins and Wolff are owners of real property located at 6 Halstead Lane in Branford, which abuts the plaintiff's property. The trial court granted their motion to intervene as defendants in this administrative appeal. See *Wihbey* v. *Zoning Board of Appeals*, 218 Conn. App. 356, 359 n.4, 292 A.3d 21 (2023). We refer to the board, Hopkins, and Wolff collectively as the defendants.

Wihbey *v.* Zoning Board of Appeals

tion to enact planning and zoning regulations. Its executive board enforces those regulations and employs a zoning enforcement officer to assist in that function.

The plaintiff purchased the residence located at 3 Crescent Bluff Avenue in Pine Orchard (property) in 2005. The property is located in a zoning district in which several uses were permitted at the time of the purchase, including use of a property as "[a] single-family dwelling." Pine Orchard Assn. Zoning Regs., § IV (4.1) (1994) (1994 regulations).[2] Since 2005, the plaintiff has rented the property through Vrbo.[3] On average, the plaintiff rented the property for more than fifty days per year for periods of three days to one week. The plaintiff does not use the property as his primary residence.

In 2018, in response to complaints from several Pine Orchard residents concerning disruptions caused by short-term vacation rentals, Pine Orchard adopted several amendments to its zoning regulations, including one prohibiting the rental of a single-family dwelling for less than thirty days.[4] In August, 2019, Pine Orchard's

---

[2] Although Pine Orchard refers to its zoning regulations collectively as the Pine Orchard Association Zoning Ordinance, we refer to this body of regulations as regulations in the interest of consistency.

[3] "Vrbo, formerly Vacation Rentals by Owner, is a website on which owners can advertise their houses and other properties for rent." (Internal quotation marks omitted.) *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 358 n.1.

[4] Section 4 of the 2018 Pine Orchard Association zoning regulations (2018 regulations) provides in relevant part that, in the zoning district in which the property is located, "no building or land shall be used and no building shall be erected or altered which is arranged, intended or designed to be used respectively for other than one or more of the following uses:

"4.1 A single-family dwelling . . . A single-family dwelling may not be used or offered for use as a [s]hort-[t]erm [r]ental [p]roperty. . . ."

Section 16 of the 2018 regulations defines "[short-term] rental property" as "[a] residential dwelling unit that is used and/or advertised for rent for occupancy by guests for consideration for a period of less than thirty . . . continuous days." Pine Orchard Assn. Zoning Regs., § 16 (2018).

Wihbey *v.* Zoning Board of Appeals

zoning enforcement officer issued a letter to the plaintiff alleging that he had violated that regulation and ordering him to cease and desist from using the property for short-term rentals. The plaintiff appealed from the cease and desist order to the board, claiming that his use of the property for short-term rentals was permitted under the 1994 regulations, which were in place when he purchased the property, and was a protected nonconforming use. After conducting a public hearing, the board upheld the cease and desist order.

The plaintiff then appealed to the trial court pursuant to General Statutes § 8-8 (b). The trial court concluded that the plaintiff's use of the property for short-term rentals was permitted under the 1994 regulations. It therefore sustained the plaintiff's appeal and reversed the board's decision. The defendants appealed to the Appellate Court after that court granted their petition for certification to appeal pursuant to General Statutes § 8-9. See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 367. The Appellate Court concluded that the trial court correctly had determined that the 1994 regulations permitted short-term rentals but that it incorrectly had determined that the plaintiff established a preexisting, nonconforming use of the property when the board had not made any findings about the nature and scope of the preexisting use.[5] Id., 394–95. Accordingly, the Appellate Court affirmed in part and reversed in part the trial court's judgment, and remanded the case to the trial court with direction to remand the case to the board for a factual determination on the issue of whether the plaintiff had established a lawful, nonconforming use. Id., 396.

This certified appeal followed. The defendants claim that the Appellate Court incorrectly determined that the language of the 1994 regulations is ambiguous and

---

[5] This portion of the Appellate Court's ruling is not at issue in this appeal.

Wihbey *v.* Zoning Board of Appeals

should be interpreted to mean that short-term rentals of the property were permitted. The defendants also claim that the Appellate Court made a number of other errors in interpreting the 1994 regulations. We disagree and affirm the judgment of the Appellate Court.

We begin with the defendants' claim that the 1994 regulations are unambiguous and do not permit the short-term rental of residential property. We are not persuaded. This issue presents a question of law subject to plenary review in accordance with the principles set forth in General Statutes § 1-2z. See, e.g., *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008); see also id., 716 n.7 (under § 1-2z, court is required to make threshold determination as to whether zoning regulation is ambiguous). See generally *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 21, 966 A.2d 722 (2009) (§ 1-2z applies to zoning regulations). "Because zoning regulations are in derogation of common-law property rights, they must be strictly construed and not extended by implication." *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 653, 894 A.2d 285 (2006); see also *Smith Bros. Woodland Management, LLC* v. *Planning & Zoning Commission*, 88 Conn. App. 79, 86, 868 A.2d 749 (2005) ("[when] more than one interpretation of language is permissible, restrictions [on] the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction]" (internal quotation marks omitted)).

The 1994 regulations provide in relevant part that "no building or land shall be used and no building shall be erected or altered which is arranged, intended or designed to be used respectively for other than one or more of [certain enumerated] uses . . . ." Pine Orchard Assn. Zoning Regs., § IV (1994). Section IV (4.1) of the 1994 regulations permits the erection of a "single-family dwelling." Id., § IV (4.1). A "single-family dwelling" is

defined as "[a] building designed for and occupied
exclusively as a home or residence for not more than
one family." Id., § XIII. "Family" is defined as "[o]ne or
more persons related by blood, marriage or adoption,
and in addition, any domestic servants or gratuitous
guests. A roomer, boarder or lodger, shall not be consid-
ered a member of a family." Id. The 1994 regulations
permit the posting of "[a] sign not more than five square
feet in area when placed in connection with the sale,
*rental*, construction or improvement of the premises
. . . ." (Emphasis added.) Id., § IV (4.4).

The parties agree that, because the 1994 regulations
are permissive, a use that is not expressly authorized
is not permitted. See, e.g., *Heim* v. *Zoning Board of
Appeals*, supra, 289 Conn. 716 n.8 (when zoning regula-
tions are permissive, "[a]ny use that is not permitted
is automatically excluded" (internal quotation marks
omitted)). The parties further agree that long-term rent-
als are permitted, which the defendants suggest
includes rentals of thirty days or longer.[6] The parties
disagree, however, as to whether the 1994 regulations
permit short-term rentals. The plaintiff contends that,
because nothing in the 1994 regulations clearly differen-
tiates between long-term rentals, which the defendants
acknowledge are permitted, and short-term rentals,
both are permitted. The defendants contend that the
language defining "single-family dwelling" as a dwelling

---

[6] Nothing in the 1994 regulations expressly permits owners to rent a single-
family dwelling. Although § IV (4.4) of the 1994 regulations permits an owner
to post a rental sign, that regulation does not itself permit renting but
incorporates the given fact that renting is permitted. Thus, as we discuss
more fully subsequently in this opinion, the defendants implicitly concede
that the plaintiff's right to use the property as a single-family dwelling
includes the right to rent the property. Although the defendants never
expressly state what, in their view, constitutes a "long-term" rental for
purposes of the 1994 regulations, the board's counsel contended at oral
argument before this court that the definition of "single-family dwelling"
creates a "presumption" that the 1994 regulations do not permit a rental of
less than thirty days.

Wihbey *v.* Zoning Board of Appeals

"occupied exclusively as a home or residence for not more than one family" unambiguously excludes the use of the property for "short-term rentals for profit . . . ."

In support of their interpretation, the defendants rely on several dictionary definitions of the terms "home" and "residence." See Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/home (last visited July 26, 2024) (defining "home" as "the house, apartment, etc. where you live, especially with your family"); Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/home (last visited July 26, 2024) (defining "home" in relevant part as "one's place of residence; domicile" and "the social unit formed by a family living together"); Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/residence (last visited July 26, 2024) (defining "residence" in relevant part as "the act or fact of dwelling in a place for some time" and "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn").[7] The defendants contend that these definitions establish that a "home" or "residence" is "a place where a person lives with a degree of permanency as distinguished from temporariness . . . ."[8]

[7] The defendants cite a number of other online dictionaries for definitions of the terms "home" and "residence," but the provided website addresses or URLs are nonfunctional.

[8] The defendants also claim that the definitions place "an emphasis on familial (i.e., stable) connection between the persons residing at the place." The plaintiff does not dispute that the 1994 regulations require that a single-family dwelling be occupied by only a single family, as defined by the regulations, at any given time. The question of whether the plaintiff's short-term rentals of the property before the adoption of the 2018 regulations were in compliance with this requirement, thereby establishing a lawful, nonconforming use, is not before this court, but is to be determined on remand. We therefore focus our analysis on the defendants' claim that the definitions of "home" and "residence" establish that they are places where a family lives with "a degree of permanency . . . ."

Wihbey *v.* Zoning Board of Appeals

Although we agree with the defendants that this characteristic *can* be attributed to a "home" and a "residence," we do not agree that those terms *necessarily* refer to places where an individual will live for any particular length of time. For example, as the Appellate Court noted, the terms "home" and "residence" can denote a specific type of structure, i.e., a structure that is used primarily as a house or dwelling. See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 374–76, citing The American Heritage Dictionary of the English Language (5th Ed. 2011) p. 840 (defining "home" as, among other things, "[t]he physical structure within which one lives, such as a house or apartment"), Webster's Third New International Dictionary (1993) p. 1082 (defining "home" as, among other things, "a private dwelling: house"), and Webster's Third New International Dictionary (1993) p. 1931 (defining "residence" as, among other things, "a building used as a home: dwelling"). Under these definitions, the language of the 1994 regulations permitting a "single-family dwelling" defined as "[a] building designed for and occupied exclusively as a home or residence for not more than one family"; Pine Orchard Assn. Zoning Regs., §§ IV (4.1) and XIII (1994); would mean that the primary structure on the property must be designed and used as a house or dwelling for occupation by only one family at a given time. In contrast, structures that are designed to be or are in fact occupied by multiple families at the same time, or by commercial enterprises other than those expressly allowed, are not permitted.[9] This defini-

[9] The 1994 regulations expressly allow a single-family dwelling to be used as the "[o]ffice of a physician, surgeon, lawyer, architect, insurance agent, accountant, engineer, land surveyor, or real estate broker, when located in the dwelling used by such person as his private residence . . . ." Pine Orchard Assn. Zoning Regs., § IV (4.2) (1994). These uses are consistent with the interpretation of the definition of "single-family dwelling" as permitting structures that are designed and used as a house or dwelling for occupation by one family.

The Appellate Court concluded that the drafters' use of both the term "home" and the term "residence" should be interpreted to mean that they

Wihbey *v.* Zoning Board of Appeals

tion focuses not on the length of time that a particular family occupies the structure but on the nature and use of the structure at any given time.

The cases cited by the Appellate Court in support of its determination that "so long as one family dwells in the property, *any* amount of time . . . [is] sufficient to make the property the family's residence"; (emphasis in original) *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 384; bolster our conclusion that this interpretation is reasonable in this context.[10] See id., 384–85. Although the defendants may be correct that "no group of college buddies (or even a family) renting the [plaintiff's] property for a long weekend would con-

---

"intended to attach different meanings to those terms." *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 376; see id. (quoting *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003), for proposition that "[t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" (internal quotation marks omitted)). The Appellate Court also acknowledged, however, that there is significant overlap in the definitions of these terms. See *Wihbey* v. *Zoning Board of Appeals*, supra, 376. In our view, both the terms "home" and "residence" reasonably can be interpreted to refer to a structure that is used as a dwelling.

[10] See *Slaby* v. *Mountain River Estates Residential Assn., Inc.* 100 So. 3d 569, 579 (Ala. Civ. App. 2012) (property is used for " 'residential purposes' anytime it is used as a place of abode"); *Lowden* v. *Bosley*, 395 Md. 58, 68, 909 A.2d 261 (2006) (" '[r]esidential use,' without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode"); *Wilson* v. *Maynard*, 961 N.W.2d 596, 602 (S.D. 2021) (" 'residential purposes' may be plainly understood to include the occupation of a home or dwelling for an indefinite length of time"); *Tarr* v. *Timberwood Park Owners Assn., Inc.*, 556 S.W.3d 274, 292 n. 14 (Tex. 2018) ("property is used for residential purposes when those occupying it do so for ordinary living purposes" (internal quotation marks omitted)); *Wilkinson* v. *Chiwawa Communities Assn.*, 180 Wn. 2d 241, 252, 327 P.3d 614 (2014) ("[i]f a vacation renter uses a home for the purposes of eating, sleeping, and other residential purposes, this use is residential, not commercial" (internal quotation marks omitted)); *Heef Realty & Investments, LLP* v. *Cedarburg Board of Appeals*, 361 Wis. 2d 185, 194, 861 N.W.2d 797 (App.) ("[W]hat makes a home a residence is its use to sleep, eat, shower, relax, things of that nature. What matters is residential use, not the duration of the use." (Internal quotation marks omitted.)), review denied, 865 N.W.2d 503 (Wis. 2015).

Wihbey *v.* Zoning Board of Appeals

sider it *their* 'residence' ''; (emphasis added); a reasonable person certainly would consider it *a* residence, i.e., a place used as a house or dwelling.

The fact that, as the defendants acknowledge, the 1994 regulations allow owners to rent single-family dwellings also supports this interpretation. If renting a single-family dwelling is allowed under the 1994 regulations, the right to use a property as a "home" or "residence" must encompass the right to rent the property, as nothing else in the regulations expressly permits renting, and, as the Appellate Court emphasized, nothing in the regulations restricts the length of time that a family renting a property must occupy it.[11] See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 382–83. Indeed, the defendants' interpretation would lead to the anomalous result that, if the plaintiff occupied the property only on alternate weekends, leaving it vacant the rest of the time, the use would be illegal because the plaintiff would not be occupying the property "with a degree of permanency . . . ." Cf. *Slaby* v. *Mountain River Estates Residential Assn.*, *Inc.*, 100 So. 3d 569, 579–80 (Ala. Civ. App. 2012) (rejecting interpretation of "residential purposes" that would mean that owner's intermittent use of property as vacation home was in violation of restrictive covenant).

---

[11] The defendants repeatedly insist that "[t]his case does not involve the need to 'draw lines' between long-term rentals and short-term rentals. It involves the interpretation of the term[s] 'home' and 'residence' . . . ." Thus, they claim that those terms, in and of themselves, and without the need for any interpolative judicial line drawing, distinguish between rentals for thirty days or more (permitted in their view) and rentals for less than thirty days (not permitted). Unlike the dissent, we are not persuaded. The dissent claims that there is "overwhelming support for the plain meaning of 'residence' to require a degree of permanence . . . ." We disagree. We cannot conclude that a zoning scheme that permits the rental of single-family homes and residences, by virtue of that fact alone, provides notice to a reasonable person that a rental of thirty days would have a sufficient degree of "permanency," whereas a rental of three weeks would not.

Wihbey *v.* Zoning Board of Appeals

We therefore reject the defendants' claim that the definition of "single-family dwelling" in § XIII of the 1994 regulations clearly and unambiguously means that a family must occupy the home or residence "with a degree of permanency" and that short-term rentals are not permitted. Rather, the language allowing the erection of "[a] building designed for and occupied exclusively as a home or residence for not more than one family"; Pine Orchard Assn. Zoning Regs., § XIII (1994); is ambiguous and reasonably can be interpreted as permitting the erection of houses or dwellings that are designed for occupation and used by only one family at any given time, without any temporal occupation requirement. We therefore conclude that the Appellate Court correctly determined that the 1994 regulations permit short-term rentals of the property. See, e.g., *Smith Bros. Woodland Management, LLC* v. *Planning & Zoning Commission*, supra, 88 Conn. App. 86 ("[when] more than one interpretation of language is permissible, restrictions [on] the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction]" (internal quotation marks omitted)).

The defendants contend that this interpretation is inconsistent with this court's holding in *State* v. *Drupals*, 306 Conn. 149, 49 A.3d 962 (2012). In that case, we interpreted the provisions of General Statutes (Rev. to 2011) § 54-251 (a)[12] requiring a convicted sex offender to register his residence address without undue delay. See id., 161–69. We held that "residence means the act or fact of living in a given place for some time, and the term does not apply to temporary stays." Id., 163. The Appellate Court addressed the defendants' contention at some length; see *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 378–82; and there is no need to

---

[12] All references in this opinion to § 54-251 are to the 2011 revision of the statute.

Wihbey *v.* Zoning Board of Appeals

repeat its cogent analysis here. With respect to the defendants' claim that the Appellate Court incorrectly determined that this court's interpretation of "residence" in *Drupals* was based on the rule of lenity in the criminal context, we acknowledge that, after setting forth that rule in *Drupals*, this court never expressly stated that it applied because the term "residence," as used in § 54-251 (a), is ambiguous. See *State* v. *Drupals*, supra, 160; see also *Wihbey* v. *Zoning Board of Appeals*, supra, 381 (concluding that "[t]he rule of strict construction in *Drupals* led to a narrower definition of residence because the narrower definition benefited the accused"). Even if we were to assume that the Appellate Court gave undue weight to this distinction between *Drupals* and the present case, its reasoning that a definition of "residence" that included places where a person lives only briefly would have led to absurd results in *Drupals*, but not in the present case, remains valid. Similarly, we agree with the Appellate Court that the term "residence" may have different meanings in different contexts. See *Wihbey* v. *Zoning Board of Appeals*, supra, 382. Indeed, this court acknowledged in *Drupals* that, under certain circumstances that were not present in that case, the term "residence" as used in § 54-251 can mean "wherever [an individual] was dwelling, no matter how temporary [the] situation," including "under a bridge . . . ." (Internal quotation marks omitted.) *State* v. *Drupals*, supra, 164. Therefore, we conclude that the 1994 regulations permit the rental of the plaintiff's property without any temporal restriction.

The defendants also claim that the Appellate Court made a number of other errors in interpreting the 1994 regulations. First, they contend that the Appellate Court incorrectly treated the regulations as prohibitory—i.e., as permitting whatever was not prohibited—rather than permissive—i.e., as prohibiting whatever was not permitted—when it concluded that, "in the absence of clear

language . . . imposing some restriction on the rental of property as a permissible use, we may not impose such a restriction.'' *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 372. We disagree. The Appellate Court merely observed that the ability to rent property is ''one third of [an owner's] bundle of economically productive rights constituting ownership''; (internal quotation marks omitted) id.; and the intent to deprive landowners of that right cannot be assumed in the absence of clear language evincing such an intent. See id. After observing that ''the defendants agreed that the 1994 regulations permitted long-term rentals of residential properties,'' presumably because renting a property is one of the rights constituting ownership; id.; the Appellate Court went on to conclude that, because there was no evidence that the drafters had any intent to permit *only* long-term rentals, short-term rentals were permitted. Id., 391–92.

Second, the defendants contend that the Appellate Court incorrectly determined that ''interpreting 'residence' to exclude temporary stays would render it duplicative of 'home' and therefore 'essentially meaning less.' '' They argue that, although the term ''home'' connotes a greater degree of permanence, the term ''residence'' implies a temporal occupation requirement of significant duration. We have concluded that, as used in the 1994 regulations, the terms ''home'' and ''residence'' both reasonably can be interpreted to mean a structure that is designed for use as a house or dwelling, regardless of the length of time that it is occupied. We cannot conclude that the Appellate Court's interpretation of ''residence'' is unreasonable simply because it determined that the term ''home'' is somewhat less susceptible of this interpretation. We therefore reject this claim.

Third, the defendants contend that the Appellate Court incorrectly determined that short-term rentals are permitted because the 1994 regulations allowed

Wihbey *v.* Zoning Board of Appeals

owners to rent single-family dwellings and did not differentiate between long-term and short-term rentals. The defendants argue that the Appellate Court failed to recognize that the drafters could not have anticipated the "relatively recent practice of short-term rentals facilitated by technological innovation." (Internal quotation marks omitted.) They further argue that the Appellate Court failed to recognize that the family occupancy requirement shows that "a residence is for occupation by individuals who share a common bond of significant duration, [and] it naturally follows that a residence would be intended to include a degree of permanence . . . ." (Emphasis omitted.) Again, we disagree. It does not follow that, because the drafters failed to anticipate online rental platforms like Vrbo, they therefore intended to permit only rentals for more than thirty days. Nor does it follow from the fact that family members ordinarily share a common bond of significant duration that the drafters intended that a particular family's occupation of a single-family dwelling must have a similarly significant duration. Instead, as we explained, it is reasonable to conclude that the drafters intended that a single-family dwelling would be occupied by only a single family at any given time, not by multiple families or commercial enterprises other than those expressly permitted.

Fourth, the defendants contend that the Appellate Court incorrectly determined that the cases from other jurisdictions that support its interpretation of the 1994 regulations are persuasive and that the cases supporting the defendants' position are distinguishable. With respect to the authorities supporting the Appellate Court's interpretation, the defendants contend that the cases construing the terms "residential use" or "residential purposes" are not persuasive because those terms involve "different concepts from what is a 'residence.' " See *Lowden* v. *Bosley*, 395 Md. 58, 68, 909 A.2d 261

Wihbey *v.* Zoning Board of Appeals

(2006); *Tarr* v. *Timberwood Park Owners Assn., Inc.*, 556 S.W.3d 274, 291 and n.14 (Tex. 2018); *Wilkinson* v. *Chiwawa Communities Assn.*, 180 Wn. 2d 241, 252, 327 P.3d 614 (2014). We disagree. Nothing in these cases suggests that the terms "residential use" and "residential purposes" involve "different concepts" than those pertaining to the term "residence," and the defendants have not explained why they believe that to be the case. For the reasons that we already stated, the term "residence" reasonably can be interpreted to mean a place subject to "residential use" or used for "residential purposes."[13] Indeed, the phrases "for residential purposes" or "for residential use" could be substituted for the phrase "as a home or residence" in the definition of "single-family dwelling" without changing the meaning. See Pine Orchard Assn. Zoning Regs., § XIII (1994) (defining "single-family dwelling" as "[a] building designed for and occupied exclusively as a home or residence for not more than one family"). We conclude, therefore, that the reasoning of these cases construing the terms "residential use" and "residential purposes" to mean use as a house or dwelling, without any temporal occupation requirement, is equally applicable to the term "residence."

We also reject the defendants' claim that the Appellate Court incorrectly determined that the cases that they rely on in support of their position are not persuasive. See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 385–86 (distinguishing *Styller* v. *Zoning Board of Appeals*, 487 Mass. 588, 169 N.E.3d 160 (2021),

---

[13] Of course, a place that is used for residential purposes would not necessarily qualify as a "single-family dwelling," as defined in § XIII of the 1994 regulations. See Pine Orchard Assn. Zoning Regs., § XIII (1994) (defining "single-family dwelling" as "[a] *building designed for* and *occupied exclusively* as a home or residence *for not more than one family*" (emphasis added)). That does not indicate that the term "residence" cannot reasonably be interpreted to mean a place used "for residential purposes" or subject to "residential use."

Wihbey *v.* Zoning Board of Appeals

and *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, 652 Pa. 224, 207 A.3d 886 (2019)). The Appellate Court distinguished these cases because, unlike in the present case, the regulations at issue in both of those cases defined "family" as a "single housekeeping unit." (Internal quotation marks omitted.) *Wihbey* v. *Zoning Board of Appeals*, supra, 385; see *Styller* v. *Zoning Board of Appeals*, supra, 600 (regulation defined "family" as "single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, or hotel" (internal quotation marks omitted)); *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, supra, 233–34 (regulation defined "family" as "[o]ne or more persons, occupying a dwelling unit, related by blood, marriage, or adoption, living together as a single housekeeping unit and using cooking facilities and certain rooms in common" (internal quotation marks omitted)). As the court in *Slice of Life, LLC*, observed, however, the phrase "single housekeeping unit" has been widely construed to be " 'the plain and ordinary meaning of "family" in the zoning context.' " *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, supra, 232. Because there is nothing inherent in the definition of "family" as a "single housekeeping unit" that connotes a significantly greater degree of coherence or permanence than that inherent in the term "family," as defined in the 1994 regulations; see Pine Orchard Assn. Zoning Regs., § XIII (1994); we are compelled to conclude that, contrary to the Appellate Court's determination, the variance between these definitions constitutes a distinction without a difference.

Even though we conclude that *Styller* and *Slice of Life, LLC*, are not distinguishable on this ground, we nevertheless find that they are not persuasive. In *Styller*, the Massachusetts Supreme Judicial Court concluded that a zoning regulation that permitted a "one family detached house" did not permit a short-term rental

because such a use was "inconsistent with the zoning purpose of the single-residence zoning district in which it [was] situated, i.e., to preserve the residential character of the neighborhood." *Styller* v. *Zoning Board of Appeals*, supra, 487 Mass. 599. The court further concluded that "[u]se of zoning regulation[s] to foster stability and permanence is compatible with long-term property rentals because long-term inhabitants have the opportunity to develop a sense of community and a shared commitment to the common good of that community . . . . [When] short-term rentals are at issue, however, there is an absence of stability and permanence of the individuals residing in those districts, [and] the goal is necessarily subverted . . . ." (Citation omitted; internal quotation marks omitted.) Id.

Similarly, in *Slice of Life, LLC*, the zoning regulation at issue permitted single-family detached dwellings. See *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, supra, 652 Pa. 252. The Pennsylvania Supreme Court concluded that, because "short-term rentals of homes located in a single-family residential zoning district undoubtedly affect the essential character of a neighborhood and the stability of a community"; (internal quotation marks omitted) id., 246; short-term rentals were not permitted. Id., 252.

As we explained previously, zoning regulations "must be strictly construed and not extended by implication"; *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653; and a zoning regulation that is susceptible to multiple, reasonable interpretations will be construed in favor of the landowner. See, e.g., *Smith Bros. Woodland Management, LLC v. Planning & Zoning Commission*, supra, 88 Conn. App. 86. The definition of "single-family dwelling" in the 1994 regulations does not clearly and unambiguously mean that only long-term rentals of such dwellings are permitted but reasonably can be interpreted to mean that only structures designed and used as

350 Conn. 87 OCTOBER, 2024 105

Wihbey *v.* Zoning Board of Appeals

houses or dwellings for occupation by a single family at a given time are permitted. Again, the defendants concede that renting a single-family dwelling is a permitted use, and nothing in the 1994 regulations differentiates between long-term rentals and short-term rentals. Although zoning authorities are free to adopt regulations that permit only long-term rentals in an effort to promote stability and a sense of community within a single-family residential zone—as the Pine Orchard zoning authority did in 2018—we do not agree with the courts in *Styller* and *Slice of Life, LLC*, that a regulation that permits single-family dwellings ipso facto prohibits the rental of a dwelling for less than a particular period of time. Rather, there must be specific evidence of such an intent. We therefore conclude that these cases are not persuasive.

For the foregoing reasons, we conclude that the Appellate Court correctly determined that the short-term rental of a single-family dwelling constitutes a permissible use of the property under the 1994 regulations.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and D'AURIA, MULLINS and DANNEHY, Js., concurred.

McDONALD, J., with whom ECKER, J., joins, dissenting. This appeal centers on whether the zoning regulations governing a residential neighborhood designated for "single-family" homes permit the short-term occupancy of those structures by transient travelers.[1] This court has recognized that "[t]he purpose of zoning is to serve the interests of *the community as a whole*

---

[1] The Vrbo terms and conditions expressly refer to the party paying for use of the property as a "traveler." Vrbo, Terms and Conditions (last updated July 6, 2023), available at https://www.vrbo.com/lp/b/terms-of-service?msockid=1592f2630ba46bf63156e0c10a5a6a5e (last visited July 26, 2024).

Wihbey *v.* Zoning Board of Appeals

. . . .'' (Emphasis added.) *Malafronte* v. *Planning & Zoning Board*, 155 Conn. 205, 212, 230 A.2d 606 (1967). Today, the majority of this court discounts both the importance of zoning regulations to the interests of the community as a whole and the plain meaning of the terms included in the applicable residential zoning regulations and holds that the short-term occupancy of a single-family home by transient travelers, which undermines the very purpose of the applicable zoning regulations, nevertheless is permitted by those regulations.

The plaintiff, Frances Wihbey, was ordered by the zoning enforcement officer (zoning officer) of the Pine Orchard Association (POA), an incorporated borough and municipal subdivision of the town of Branford, to cease and desist from engaging in the short-term rental of a single-family property the plaintiff owned in the POA. The plaintiff appealed to the defendant, the Zoning Board of Appeals of the Pine Orchard Association (board), which upheld the cease and desist order. The plaintiff then appealed from the board's decision to the trial court, which reversed that decision. The board and the intervening defendants, Michael B. Hopkins and Jacqueline C. Wolff,[2] appealed, on the granting of certification, from the trial court's judgment to the Appellate Court, which affirmed in part and reversed in part the trial court's judgment. *Wihbey* v. *Zoning Board of Appeals*, 218 Conn. App. 356, 359, 396, 292 A.3d 21 (2023). This court granted certification to determine whether short-term occupancy of a single-family dwelling by transient travelers constitutes a permissible use of the subject property under the 1994 POA zoning regulations (1994 regulations).[3] See *Wihbey* v. *Zoning Board of Appeals*,

_____

[2] The intervening defendants are owners of real property that abuts the plaintiff's property. For convenience, I hereafter refer to the board and the intervening defendants collectively as the defendants.

[3] Although the POA refers to the 1994 regulations collectively as the 1994 Pine Orchard Association Zoning Ordinance, I refer to this body of regulations as regulations in the interest of simplicity.

Wihbey *v.* Zoning Board of Appeals

346 Conn. 1019, 1019–20, 292 A.3d 1254 (2023). Because I conclude that the short-term occupancy of the plaintiff's property by transient travelers was impermissible under the 1994 regulations, I would reverse in part the judgment of the Appellate Court. Accordingly, I respectfully dissent.

In 2005, the plaintiff purchased property in the POA. The property consists of a single-family home subject to the POA's zoning regulations. Since purchasing the property, the plaintiff has consistently allowed travelers to book the property on a short-term basis, typically for periods of three days to one week, on the Vrbo[4] website. Importantly, in the last ten years, these transient travelers have never stayed at the property for more than thirty days at a time.[5]

Relevant to this appeal, the 1994 regulations state that the purpose of the regulations is to "provid[e] a comprehensive plan which will promote the health, safety, and general welfare of the community" and that the regulations "shall be made with reasonable consideration as to the character of the community . . . ."

_____

[4] Vrbo is a web-based platform that allows property owners to connect with potential short-term travelers. Vrbo, Terms and Conditions (last updated July 6, 2023), available at https://www.vrbo.com/lp/b/terms-of-service?msockid= 1592f2630ba46bf63156e0c10a5a6a5e (last visited July 26, 2024) (stating that "[t]he [s]ite is a [v]enue and [w]e are [n]ot a [p]arty to any [r]ental [a]greement or other [t]ransaction [b]etween [u]sers of the [s]ite"). Vrbo does not provide "rental agreements," but property owners are permitted to separately enter into these agreements with renters. See Vrbo, Upload Your Rental Agreement, available at https://help.vrbo.com/articles/How-to-upload-my-rental-agreement (last visited July 26, 2024) ("[r]ental agreements are optional documents you can add to your listing to expand on your house rules and set expectations with guests").

[5] A period of less than thirty days is widely considered transient and insufficient to establish an individual's dwelling. See, e.g., General Statutes § 47a-2 (c) (1) ("[o]ccupancy in a hotel, motel or similar lodging for less than thirty days is transient"); Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. pt. 36, app. A (2023) (local laws and common real estate practices "treat stays of [thirty] days or less as transient rather than residential use").

Wihbey *v.* Zoning Board of Appeals

Pine Orchard Assn. Zoning Regs., § I (1994). Section IV (4.1) of the 1994 regulations, which lists the permitted uses of properties, provides one permitted use to be as "[a] single-family dwelling"; id., § IV (4.1); which is defined in § XIII as "[a] building designed for and occupied exclusively as a home or residence for not more than one family." Id., § XIII. Section XIII of the 1994 regulations further defines "family" as "[o]ne or more persons related by blood, marriage or adoption, and in addition, any domestic servants or gratuitous guests. A roomer, boarder or lodger, shall not be considered a member of a family."[6] Id. The 1994 regulations do not expressly permit the renting of single-family homes but do provide that "[a] sign not more than five square feet in area when placed in connection with the sale, *rental*, construction or improvement of the premises and for no other purpose" is permitted. (Emphasis added.) Id., § IV (4.4).

In 2018, the POA adopted recommended amendments to its 1994 regulations, which included a specific provision prohibiting the short-term rental of properties subject to the regulations. Specifically, § 4 (4.1) of the 2018 zoning regulations (2018 regulations) states that "[a] single-family dwelling may not be used or offered for use as a [s]hort-[t]erm [r]ental [p]roperty." Pine Orchard Assn. Zoning Regs., § 4 (4.1) (2018). The 2018 regulations define "short-term rental property" as "[a] residential dwelling unit that is used and/or advertised for rent for occupancy by guests for consideration for a period of less than thirty . . . continuous days." Id., § 16.

---

[6] It is not clear that the property was always rented to a family within the meaning of the 1994 regulations. The record reflects that the property was sometimes used to accommodate groups of "thirty or forty people going late into the night . . . ." It is probable that some of the plaintiff's uses were not permitted under the regulations, but it is also likely that, on at least one occasion, he did rent to a "family" for purposes of the regulations. Nonetheless, I recognize that the issue has been remanded to the trial court for factual findings.

Wihbey *v.* Zoning Board of Appeals

In 2019, the POA, acting through its zoning officer, issued a cease and desist order to the plaintiff for violations of the short-term rental ordinance and stated that the plaintiff's use of his property violated § 13 (13.3.2) of the 2018 regulations prohibiting short-term rentals. The plaintiff appealed from this order to the board, and, after public hearings on the matter, the appeal was denied. The plaintiff then appealed to the trial court, which concluded that, because the plaintiff's use of the property was permitted under the 1994 regulations, the plaintiff could not be prohibited from using his property for short-term rentals under the 2018 regulations. Accordingly, the trial court reversed the board's decision. The defendants thereafter appealed, and the Appellate Court affirmed in part the trial court's judgment, concluding that the short-term rental of a single-family dwelling was permissible under the 1994 regulations. *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 359, 391–92, 396. The Appellate Court, however, also reversed in part the trial court's judgment, concluding that the trial court incorrectly determined that the plaintiff had established a preexisting, nonconforming use of the property.[7] Id., 359, 392–96. This certified appeal followed.

On appeal, the defendants argue that the Appellate Court erred in concluding that short-term rentals of a single-family dwelling constitute a permissible use under the 1994 regulations. In support of this contention, the defendants point to the language of the 1994 regulations that provides that the only relevant permissible use of the property was as "[a] single-family dwelling"; Pine Orchard Assn. Zoning Regs., § IV (4.1) (1994); which is defined as a property "occupied exclusively as a home or residence for not more than one family." Id., § XIII.

_____

[7] Whether the Appellate Court correctly concluded that the trial court incorrectly determined that the plaintiff had established a preexisting, nonconforming use of the property is not before this court.

Wihbey *v.* Zoning Board of Appeals

The defendants contend that the Appellate Court's interpretation of the word "residence" in the 1994 regulations was incorrect because "residence" cannot refer to temporary stays of only a few days to one week. For his part, the plaintiff argues that the Appellate Court correctly concluded that short-term rentals of a single-family dwelling are permitted under the 1994 regulations. Because I agree with the defendants' interpretation of "residence," I conclude that the majority's interpretation of the applicable zoning regulations is flawed. Despite clear support to the contrary, the majority concludes that the "definition of 'single-family dwelling' in the 1994 regulations does not clearly and unambiguously mean that only long-term rentals of such dwellings are permitted but reasonably can be interpreted to mean that only structures designed and used as houses or dwellings for occupation by a single family at a given time are permitted."

The interpretation of the applicable zoning regulations presents a question of law over which this court's review is plenary. See, e.g., *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008). "[Z]oning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Citation omitted; internal quotation marks omitted.) *Enfield* v. *Enfield Shade Tobacco, LLC*, 265 Conn. 376, 380, 828 A.2d 596 (2003). Our interpretation of the 1994 regulations is therefore guided by the principles set forth in General Statutes § 1-2z. I am mindful that, "[b]ecause zoning regulations are in derogation of common-law property rights, they must be strictly construed and not extended by implication. . . . Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and

Wihbey *v.* Zoning Board of Appeals

make them operative so far as possible. . . . When more than one construction is possible, [this court] adopt[s] the one that renders the enactment effective and workable and reject[s] any that might lead to unreasonable or bizarre results.'' (Internal quotation marks omitted.) *Kraiza* v. *Planning & Zoning Commission*, 304 Conn. 447, 453–54, 41 A.3d 258 (2012).

The parties agree that the 1994 regulations are the governing regulations in this case. The parties also agree that the 1994 regulations are permissive, and, thus, ''[a]ny use that is not permitted is automatically excluded.'' (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 716 n.8. I begin with the text of the 1994 regulations. See General Statutes § 1-2z. The 1994 regulations provide that no building or land shall be used for anything other than eight specified uses, including, as relevant to this case, ''[a] single-family dwelling.'' Pine Orchard Assn. Zoning Regs., § IV (4.1) (1994). That term is defined as ''[a] building designed for and occupied exclusively as a home or residence for not more than one family.'' Id., § XIII. A ''family,'' in turn, is defined as ''[o]ne or more persons related by blood, marriage or adoption, and in addition, any domestic servants or gratuitous guests. A roomer, boarder or lodger, shall not be considered a member of a family.'' Id.

Whether the short-term use of the plaintiff's property by transient travelers is permitted by the 1994 regulations turns on the meaning of the terms ''home'' and ''residence.'' These terms are not defined in the regulations. It is well settled that, ''[i]f a . . . regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary.'' (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 717. ''Home'' is consistently defined as a place that is fixed. See, e.g., Ballentine's Law Dictionary (3d Ed.

Wihbey *v.* Zoning Board of Appeals

1969) pp. 563–64 (Describing "home" as "[a] word so suggestive of love, affection, and security as to be one of the most pleasantly sounding words in the English language. A place where a [couple] may live in the enjoyment of each other's society and rear their off-spring. . . . The place where a family lives in the close relation of people who enjoy the company of each other and the comfort and security of abiding together . . . ." (Citations omitted.)); 7 Oxford English Dictionary (2d Ed. 1998) p. 322 (defining "home" as "[a dwelling place], house, abode; the *fixed* residence of a family or house-hold; the *seat* of domestic life and interests; one's own house; the dwelling in which one *habitually lives*, or which one regards as one's proper abode" (emphasis added)); The American Heritage College Dictionary (4th Ed. 2007) p. 662 (Defining "home" as "[a] place where one lives; a residence. . . . A dwelling place together with the social unit that occupies it; a household.").

The definitions of "residence" similarly connote a degree of permanency that does not apply to the nature of transient, short-term occupancy. See, e.g., Black's Law Dictionary (2d Ed. 1910) p. 1026 (Defining "residence" as "[l]iving or dwelling in a certain place perma-nently or for a considerable length of time. The place where a man makes his home, or where he dwells per-manently or for an extended period of time."); 13 Oxford English Dictionary, supra, p. 707 (defining "residence" as "hav[ing] one's usual [dwelling place] or abode; to reside . . . to take up one's residence, to establish one-self; to settle," and "[t]he circumstance . . . of having one's permanent or usual abode in or at a certain place" (emphasis omitted)); The American Heritage College Dictionary, supra, p. 1183 (defining "residence" as "[t]he place in which one lives; a dwelling").

These dictionary definitions lead me to conclude that the plain meanings of both "home" and "residence" imply a degree of permanence and connection to com-

Wihbey *v.* Zoning Board of Appeals

munity that could hardly be used, accurately or with a measure of precision, to refer to a short-term occupancy by a transient traveler for a few days.[8] At the same time, "[i]t is a fundamental tenet of statutory construction that [t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003); see also, e.g., *Enfield* v. *Enfield Shade Tobacco*, *LLC*, supra, 265 Conn. 380 (interpretation of zoning regulations is governed by same principles that apply to construction of statutes). However, simply because the terms "home" and "residence" necessarily have different meanings within the 1994 regulations does not mean that the terms must lie on totally different ends of the spectrum regarding their respective meanings related to housing. It is entirely possible, and indeed the only appropriate interpretation in my view, that the two terms, when read in the context of the regulations, were intended to encompass two types

---

[8] The Appellate Court agreed that the term "home" signals a level of permanence. See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 376 ("the essence of the definitions of 'home' indicate that a home is a 'domicile,' i.e., 'a person's fixed, permanent, and principal home for legal purposes' "). However, despite the overwhelming support for the plain meaning of "residence" to require a degree of permanence, the Appellate Court concluded that "it can also mean a place where someone lives for some period of time without the same sense of permanence associated with a home." Id. The Appellate Court found support for this conclusion in the word "or" separating "home" and "residence . . . ." (Internal quotation marks omitted.) Id. The Appellate Court correctly concluded that the use of this conjunction suggests that the drafters of the regulations intended to attach different meanings to the two terms. See id. The Appellate Court then concluded that, because "home" necessarily implies some sense of permanence, to interpret "residence" as also referring to a dwelling with a sense of permanence, as opposed to "a place of temporary sojourn," would render the term duplicative of "home" and, thus, "essentially meaningless." (Internal quotation marks omitted.) Id.

Wihbey *v.* Zoning Board of Appeals

of acceptable uses of the property that imply some degree of permanence. For example, a "residence" could refer to a Vermont vacation property used by the property owners and their family on winter weekends to ski or to celebrate certain holidays. Similarly, it is not at all uncommon in Connecticut for a family to have its "home" in Florida for six months and one day for tax purposes but simultaneously maintain a "residence" in Connecticut where the family spends five months and twenty-nine days in the spring and summer months. See, e.g., *9 Pettipaug, LLC* v. *Planning & Zoning Commission*, 349 Conn. 268, 273, 316 A.3d 318 (2024) (borough of Fenwick has fourteen year-round households and "an additional sixty-seven homes that serve as summer residences"). Often these second "residences" are summer retreats along the coastline, handed down from generation to generation, speaking to their permanence for the family's benefit. Such a use is very different from the transient nature of a short-term traveler, who may use a property once for a few days and never return again. It is hard to imagine a person claiming with a straight face that he or she made a reservation at a local hotel when visiting a family member for a weekend and properly characterizing it as his or her "residence" for the thirty-six hours that the person was in town. A seasonal vacation property, on the other hand, is still utilized with a sense of permanence, as the owner typically has an intention to come and go over time, and, usually, it would bear the hallmarks of permanence, appointed with the owner's furnishings and closets filled with his or her clothes.[9] Thus, although a vacation property may not be an individual's "home," it may well

---

[9] This is not to suggest that a person's second "residence" is always a vacation or seasonal home. In today's economy, it is not unusual for individuals to work for a company based in Connecticut while, for example, maintaining a home in Atlanta, Chicago or Dallas, and occupying another residence near the company's headquarters in Connecticut, where they live for part of the week and fly home to their family on weekends.

Wihbey *v.* Zoning Board of Appeals

be characterized as a "residence." The majority claims that "the defendants' interpretation would lead to the anomalous result that, if the plaintiff occupied the property only on alternate weekends, leaving it vacant the rest of the time, the use would be illegal because the plaintiff would not be occupying the property 'with a degree of permanency . . . .' " This claim ignores the spectrum of possibilities that comes with property ownership and erroneously equates the use of one's vacation property throughout the year with that of inconsistent and detached short-term renters. I do not see the 1994 regulations in such binary terms.

The majority concludes that *both* "residence" and "home" can refer to transient uses of property. See text accompanying footnote 9 of the majority opinion ("Under these definitions, the language of the 1994 regulations permitting a 'single-family dwelling' defined as '[a] building designed for and occupied exclusively as a home or residence for not more than one family' . . . would mean that the primary structure on the property must be designed and used as a house or dwelling for occupation by only one family at a given time. . . . This definition focuses not on the length of time that a particular family occupies the structure but on the nature and use of the structure at any given time." (Citation omitted; footnote omitted.)); see also footnote 9 of the majority opinion ("[i]n our view, both the terms 'home' and 'residence' reasonably can be interpreted to refer to a structure that is used as a dwelling"). This interpretation of the word "home" extends far beyond the common meaning and finds no support in the regulations at issue here. Indeed, an interpretation of both "home" and "residence" that implies a sense of permanency is in keeping with the purpose of the 1994 regulations when read in their entirety. See General Statutes § 1-2z (plain meaning of statute is ascertained from text itself and its relationship to other statutes). At the

Wihbey *v.* Zoning Board of Appeals

outset, the 1994 regulations provide that they are "made for the purpose of providing a comprehensive plan which will promote the health, safety, and general welfare of the community . . . ." Pine Orchard Assn. Zoning Regs., § I (1994). The interpretation advanced by the majority fails to consider, much less promote, the "general welfare of the community . . . ." Id. At a hearing conducted before the board, residents described the plaintiff's property as a "Motel 6," a "revolving weekend party house," an "absolute horror," a "frat [house]," "very destructive," and "very loud . . . ." One resident spoke about the numerous emails and texts he sent to the plaintiff to complain about the trespassing that had occurred on his property and stated his intention to sell his own property if the activities on the plaintiff's property continued. Another resident urged the board to consider the "negative impact that [the plaintiff's short-term rentals have] on our neighborhood and our residential communities' character . . . ."

Other courts, when faced with the question of whether short-term occupancies by transient travelers are permitted by the applicable zoning regulations, have looked at the impact that such rentals have had on the community as a whole. See, e.g., *Ewing* v. *Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1591, 286 Cal. Rptr. 382 (1991) (finding that short-term rentals of homes in single-family residential zoning districts "undoubtedly affect the essential character of a neighborhood and the stability of a community"), review denied, California Supreme Court, Docket No. S023822 (January 8, 1992), cert. denied, 504 U.S. 914, 112 S. Ct. 1950, 118 L. Ed. 2d 554 (1992). Short-term occupancies of single-family homes by transient travelers directly upend the purpose of the 1994 regulations because they do not serve the "general welfare of the community . . . ." Pine Orchard Assn. Zoning Regs., § I (1994). This is because "[s]hort-term tenants have little interest in public agencies or

Wihbey *v.* Zoning Board of Appeals

in the welfare of the citizenry. They do not participate in local government, coach [L]ittle [L]eague, or join the hospital guild. They do not lead a scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow— without engaging in the sort of activities that weld and strengthen a community." *Ewing* v. *Carmel-By-The-Sea*, supra, 1591. Interpreting the 1994 regulations as prohibiting short-term occupancies, on the other hand, directly serves the general welfare of the community and, therefore, is in keeping with both the common dictionary definitions of the terms "home" and "residence" and the express purpose of the 1994 regulations. "The permanence and stability of people living in single-family residential zoning districts [create] a sense of community, [cultivate] and [foster] relationships, and [provide] an overall quality of a place where people are invested and engaged in their neighborhood and care about each other." *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, 652 Pa. 224, 246, 207 A.3d 886 (2019).

Furthermore, the 1994 regulations specifically exclude "roomer[s], boarder[s] or lodger[s]" from the definition of "family" and, therefore, from being appropriate users of the single-family homes in the district. Pine Orchard Assn. Zoning Regs., § XIII (1994). The parties agree that, in this case, the travelers do not qualify as "roomer[s], boarder[s] or lodger[s] . . . ." Id. "The ordinary meaning of all three terms is someone who pays to live either in a [single] room of another's property or with a family in that property and who may receive regular meals while staying with the family. See [Merriam-Webster's Collegiate Dictionary (11th Ed. 2003)] p. 1082 (defining 'roomer' as 'one who occupies a rented room in another's house'); id., p. 137 ('boarder' is 'one that boards; [especially]: one that is provided with regular meals or regular meals and lodging'); id., p. 731 ('lodger' is

Wihbey *v.* Zoning Board of Appeals

defined as 'roomer'); [Black's Law Dictionary (11th Ed. 2019)] p. 214 (defining 'boarder' as '[s]omeone who lives in another's house and receives food and lodging in return either for regular payments or for services provided'); [Black's Law Dictionary (11th Ed. 2019)] p. 1128 ('lodger' is '[s]omeone who rents and occupies a room in another's house'). If a family rents the entire property from a landowner and is not living with the landowner, the family members are, by definition, not roomers, boarders or lodgers.'' *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 390. This specific exclusion, however, provides additional support for the conclusion that the 1994 regulations did not intend to allow for short-term, transient uses of the properties subject to the regulations. There would be no purpose in excluding the short-term use of one *room* in a home but allowing for the short-term use of the home itself. A more sensible reading of the 1994 regulations, then, is that they prohibit both types of transient uses in favor of uses that have a degree of permanence and stability that is in keeping with the whole community or district.

When the terms "home" and "residence" are read in the context of the POA's entire zoning regulatory scheme, it is clear that, as used in the 1994 regulations, both terms unambiguously mandate that the property be used with some degree of permanence. Such a conclusion does not render either word meaningless because, as I explained, those words lie at different points on the spectrum of permissible uses. This interpretation is in keeping with the common understanding of the terms "home" and "residence" and, importantly, with the overall purpose of the zoning regulations. I would therefore reverse in part the Appellate Court's judgment and hold that the 1994 regulations do not permit short-term transient uses of single-family dwellings.

Accordingly, I respectfully dissent.